# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADAM M. APTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-0971 (KBJ) |
| | ) | |
| VOLKSWAGEN GROUP OF | ) | |
| AMERICA, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

In April of 2016, pro se plaintiff Adam Apton—the lessee of a 2013 Volkswagen Passat—received a "safety recall" letter from Defendant Volkswagen Group of America, Inc. ("Volkswagen"), notifying him of an airbag defect in his vehicle. (Compl., Attach. to Notice of Removal, ECF No. 1-4, at 2.)[1] Apton unsuccessfully attempted to address the issue by communicating with the dealer, and then filed a lawsuit against Volkswagen, VW Credit Leasing, Ltd., and Lash Auto Group, LLC (collectively, "Defendants") in the Superior Court of the District of Columbia. (*Id.*) Apton's complaint alleged a variety of claims under common law and state consumer protection statutes, including breach of contract and breach of warranty (*see id.* at 8–10), and among other requests for relief, Apton asked that the automobile lease be deemed "void and terminable by Plaintiff without penalty" (*id.* at 10). Defendants subsequently removed Apton's legal action to this Court, asserting both diversity and

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

federal-question jurisdiction.  (*See* Defs.' Notice of Removal ("Removal Notice"), ECF No. 1, at 3−7.)

Before this Court at present is Apton's Motion to Remand this case to Superior Court, which also seeks "an award of costs and expenses, including attorneys' fees, in connection with the instant motion."  (Pl.'s Mot. to Remand for Lack of Subject Matter Jurisdiction & Award Of Costs ("Pl.'s Remand Mot."), ECF No. 10-1, at 11.)  Apton argues that this Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000, and because his complaint does not raise a federal question.  (*Id.* at 8−11.)  Apton also maintains that the Court should require Defendants to compensate him for the time that he spent working on the removal issue (he is an attorney by profession), because "the non-removability of th[is] action is obvious."  (*Id.* at 11 (internal quotation marks and citation omitted).)  Defendants respond that this Court has both diversity and federal-question jurisdiction (*see* Defs.' Opp'n to Pl.'s Remand Mot. ("Defs.' Opp'n"), ECF No. 14, at 6−11), and further argue that, because Apton is a pro se plaintiff who is representing himself in this lawsuit, an award of attorneys' fees is not appropriate (*see id.* at 11−12).

For the reasons explained below, this Court agrees with Apton that Defendants have not carried their burden of establishing subject matter jurisdiction, but agrees with Defendants that Apton is not entitled to attorneys' fees or any other costs or expenses. Accordingly, Apton's Motion to Remand and Award Of Costs will be **GRANTED IN PART AND DENIED IN PART**, as reflected in the Order below.

## I.      BACKGROUND

On June 21, 2013, Apton leased a 2013 Volkswagen Passat for $10,595.74, which was spread among an initial payment and thirty-nine monthly payments.  (*See* Pl.'s Remand Mot. at 9; *see also* Compl. at 6.)  Approximately three years later, Volkswagen informed Apton that his Passat was subject to a safety recall stemming from an airbag defect.  (*See* Pl.'s Remand Mot. at 6.)  In response to this notice, Apton sought additional information regarding the available options to repair his vehicle, as well as available alternatives to driving it.  (*See id.*)  As a result of Defendants' purportedly unsatisfactory responses to his inquiries, on April 29, 2016, Apton filed a lawsuit in the Superior Court of the District of Columbia.  Apton's complaint alleged that Volkswagen, VW Credit Leasing, and Lash Auto Group had breached both the automobile lease contract and the applicable warranty, and that they had also violated various provisions of New York law.  (*See id.*; Compl. at 8−10.)[2]  Apton sought (1) a declaration that Defendants are in default of the lease and that the lease is void; (2) an award of "the costs, expenses and disbursements of this action, including any attorneys' and experts' fees"; and (3) unquantified statutory, compensatory, and punitive damages. (Compl. at 10.)

Defendants removed Apton's action to this Court on May 23, 2016, invoking both diversity jurisdiction and federal-question jurisdiction.  (*See* Removal Notice at 2.)

---

[2] Apton leased the vehicle from Lash Auto Group, which is located in White Plains, New York.  (*See* Removal Notice at 2.)  His complaint alleged violations of New York General Business Law § 198-a (which requires timely repair and replacement of defective vehicles), and New York Personal Property Law § 337 (which prohibits retail lease agreements from containing provisions in which the lessee waives the right to a trial by jury).  (*See* Compl. at 8–9.)

Defendants' removal notice maintains that complete diversity exists between the parties, and that the amount in controversy exceeds the $75,000 threshold—an assertion that is based on the representations that Apton made in the civil cover sheet that he submitted to the Superior Court with his complaint.  (*See id.* at 4 (remarking that, in the civil cover sheet, Apton represented that he was seeking $100,000 in damages).) Defendants' removal notice also asserts that, because Apton's complaint "derive[s] from the notice of recall issued by [Volkswagen], pursuant to the Motor Vehicle Safety Act, 49 U.S.C.A. § 30118 and 30119[,]" Apton's claims "require resolution of an issue of federal law[.]"  (*Id.* at 5–6.)

On June 15, 2016, Apton filed the instant motion to remand this matter to Superior Court.  (*See* Pl.'s Remand Mot.)  Apton's motion concedes that the parties are diverse, but contends that the damages amount reflected on the civil cover sheet was entered in error (*see id.* at 9 (explaining that the $100,000 figure listed on the civil cover sheet was "clearly an oversight")), and in fact, "the total amount in controversy in this case . . . does not exceed $25,000" (*id.*).  To support this contention, Apton provides a sworn affidavit, indicating that, by the time of the removal, he had incurred only approximately $13,000 in damages, consisting of the amount paid on the lease up until that point and various costs and expenses.  (*See* Decl. of Adam Apton ("Apton Decl."), ECF No. 10-2, at 2.)  Apton also rejects Defendants' contention that a federal question is present in this case; his motion maintains that "Plaintiff's Complaint does not even *mention* the Motor Vehicle Safety Act, let alone plausibly assert that Defendants violated it."  (Pl.'s Remand Mot. at 11 (emphasis added).)  Apton's motion also requests an award of the litigation costs—including attorneys' fees—that have been

incurred with respect to the instant remand motion, on the grounds that "Defendants had no legitimate basis for removing this case to federal court." (*Id.* at 12.)

Defendants' opposition to the remand motion argues that Apton should not be permitted to "attempt[] a post-removal retreat from the $100,000 amount in controversy figure that he chose to represent[] to Defendants and the Court" in the civil cover sheet (Defs.' Opp'n at 6), and that, in any event, "it is reasonable to conclude" that the $100,000 figure represents the true amount in controversy "given the complexities of this litigation" and the complaint's request for "compensatory damages, punitive damages, and attorney's fees" (*id.* at 9). Defendants also reject Apton's efforts to "style[] his claims as arising under state law," insisting, instead, that "this case turns on the resolution of a substantial federal issue involving the actions of a federal agency." (*Id.* at 9, 10.) Finally, in response to Apton's request for an award of costs, expenses, and attorneys' fees, Defendants argue that "Plaintiff provides no support for the proposition that a *pro se* Plaintiff who is also a practicing attorney is entitled to an award of such fees." (*Id.* at 11; *see also id.* at 12 ("Plaintiff, a *pro se* attorney litigant, cannot 'incur' fees payable to himself[.]").)

Apton's motion to remand is now ripe and ready for this Court's review.

## II.   LEGAL STANDARD

Congress has prescribed specific procedures for the removal and remand of civil actions. *See* 28 U.S.C. §§ 1446 (establishing procedures for removal), 1447 (establishing procedures for remand after removal). The statutory provisions that govern removal to the federal court and remand to the state court when the defendant

contends that the federal court has diversity and/or federal-question jurisdiction define the parameters of the appropriate legal analysis here.

### A. Removal On Diversity And Federal Question Grounds

"A defendant may properly remove a civil action from a state court when the federal district court has original subject matter jurisdiction." *District of Columbia v. Grp. Hospitalization & Med. Servs., Inc.*, 576 F. Supp. 2d 51, 53 (D.D.C. 2008); *see* 28 U.S.C. § 1441 (providing for removal of civil actions from state courts to federal courts). A defendant in a state court action may remove the case pursuant to section 1441 of Title 28 of the United States Code on the basis of, *inter alia*, the federal court's diversity jurisdiction, *see* 28 U.S.C. § 1332(a) (providing for original subject matter jurisdiction over cases between citizens of different states, where the amount in controversy exceeds $75,000), or because the case raises a cognizable question of federal law, *see id.* § 1331 (providing for original subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States"), or both.

Congress has specifically prescribed procedural requirements for removing an action from state court to federal court: under 28 U.S.C. § 1446(a), the defendant "shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . containing a short and plain statement of the grounds for removal[.]" *Id.* § 1446(a). Furthermore, in a case in which the defendant seeks removal on the grounds that the federal court has diversity jurisdiction, the statute provides that "the notice of removal"—rather than the initial complaint— "may assert the amount in controversy[,]" but only if two criteria are met: (1) the initial complaint seeks either "nonmonetary relief" or "a money judgment, but the State

practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded[,]" and (2) "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Id.* § 1446(c)(2)(A)–(B).  Put another way, the defendant may assert that the amount in controversy exceeds the $75,000 threshold in its removal notice—notwithstanding any sum that the plaintiff has demanded in good faith in the initial complaint (which ordinarily governs the amount-in-controversy issue, *see id.* § 1446(c)(2))—where the monetary value of the relief sought in the complaint is indeterminate on its face or the amount of the claimed money judgment is actually uncertain by operation of state law, *see id.* § 1446(c)(2)(A)(i)–(ii), *and* if the district court finds by a preponderance of the evidence that the amount in controversy in the case exceeds $75,000, *see id.* § 1446(c)(2)(B).  With respect to the second part of this standard, the district court typically determines the amount in controversy based on "proof" that is submitted by both sides.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." (internal quotation marks and citation omitted)).

A defendant may also seek to remove a civil action from state court to federal court on the grounds that the case "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  To determine whether a case raises such a federal question, courts apply the "well-pleaded complaint rule," which holds that "a

suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'"  *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (alteration in original) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").  There is also "a special and small category of cases" in which a plaintiff's claim "finds its origins in state rather than federal law[,]" but "arising under jurisdiction still lies."  *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (internal quotation marks and citation omitted); *see also, e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 315 (2005) (explaining, *inter alia*, that the defendant "was entitled to remove the [state law] quiet title action" because "the meaning of the federal statute [was] . . . an essential element of [the] quiet title claim"); *Smith v. Kan. City Title & Trust Co.*, 255 U.S. 180, 199–201 (1921) (observing that the district court had jurisdiction over a suit alleging that a particular bond issuance was unconstitutional, notwithstanding the fact that Missouri law provided the cause of action).

### B.    A Plaintiff's Motion To Remand

Once a defendant has filed a notice of removal, the case is transferred to federal court, but a plaintiff may seek to have the case sent back to state court on the grounds that the federal court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Sibley v. McConnell*, 139 F. Supp.

3d 194, 197, 199 (D.D.C. 2015) (remanding case upon plaintiff's motion pursuant to 28 U.S.C. § 1447(c)).

"When the plaintiff makes a motion to remand, the defendant bears the burden of proving federal jurisdiction." *Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012) (citations omitted). "Because federal courts are courts of limited jurisdiction, the removal statute is to be strictly construed[,]" *Kopff v. World Research Grp., LLC*, 298 F. Supp. 2d 50, 54 (D.D.C. 2003) (citations omitted), and courts "must resolve any ambiguities concerning the propriety of removal in favor of remand[,]" *Busby*, 841 F. Supp. 2d at 53 (citations omitted). Additionally, if the federal court decides to remand the case to state court, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

## III.   ANALYSIS

Defendants removed the instant breach-of-contract action to federal court on May 23, 2016, and Apton has requested an order remanding this case to Superior Court, and requiring Defendants to pay related attorneys' fees, on the grounds that this Court lacks subject matter jurisdiction over this case. Defendants maintain that removal is proper under 28 U.S.C. § 1441, because there is both diversity jurisdiction and federal-question jurisdiction. With respect to diversity jurisdiction, Defendants argue that the parties in this action are citizens of different states, and that Apton's civil cover sheet requests $100,000 in damages. (*See* Defs.' Opp'n at 5.) On the federal-question front, Defendants cast Apton's state-law claims as arising from the airbag recall coordinated by the National Highway Traffic Safety Administration (NHTSA), and thus, Defendants

say, the case "turns on the resolution of a substantial federal issue involving the actions of a federal agency" (*id.* at 10).  Defendants also assert that, even if the case is remanded, it is not appropriate for this Court to award Apton attorneys' fees in order to compensate him for his work on the remand issue.  (*See id.* at 11–12.)

As explained fully—and ordered—below, this Court concludes that Plaintiff's motion to remand will be granted, and that this matter must be remanded to Superior Court, because Defendants have not shown that this Court has subject matter jurisdiction over this case.  But Plaintiff is not entitled to an award of fees under the circumstances presented here, and therefore, Plaintiff's request for an award of fees and costs will be denied.

### A.    Defendants Have Not Demonstrated By A Preponderance Of The Evidence That The Amount In Controversy In This Matter Exceeds $75,000

There is no dispute that the parties in this case are citizens of different states; the sole focus of this Court's diversity jurisdictional inquiry is whether the amount in controversy asserted in the complaint exceeds the statutory threshold of $75,000. Defendants acknowledge that Apton's complaint demands "unspecified" damages (Removal Notice at 3), and further allege that "the amount in controversy exceeds $75,000.00" (*id.* at 5).  As explained above, in accordance with section 1446 of Title 28 of the U.S. Code, Defendants' "notice of removal may assert the amount in controversy" only "if the initial pleading seeks" qualifying relief, *see* 28 U.S.C. § 1446(c)(2)(A)(i)–(ii), *and* if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, *see id.* § 1446(c)(2)(B).  In

the absence of any arguments to the contrary, this Court has assumed, *arguendo*, that Defendants can demonstrate that Apton's requested relief satisfies sections 1446(c)(2)(A)(i) or (ii). Thus, the Court has focused its analysis on the second part of the statute's two-part test, and based on its review of the law and the evidence presented in this case, the Court concludes without hesitation that Defendants have failed to demonstrate that the amount in controversy in Apton's case exceeds the jurisdictional threshold. *See id.* § 1446(c)(2)(B).

The Court's analysis begins with the recognition that, with respect to the requirement that a district court make findings about the amount in controversy for the purpose of section 1446(c)(2)(B), "[t]he Supreme Court recently articulated a two-phase framework for adjudicating amount-in-controversy challenges to removal jurisdiction." *Sloan v. Soul Circus, Inc.*, No. 15-1389, 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015) (citing *Dart Cherokee*, 135 S. Ct. at 553–54).  At the first phase of the inquiry, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S. Ct. at 553.  But when a plaintiff challenges "a defendant's assertion of the amount in controversy[,]" the court moves to phase two, during which "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (interpreting 28 U.S.C. § 1446(c)(2)(B)).  Although "*Dart* did not prescribe procedures governing what it means for 'both sides [to] submit proof[,]' . . . "[p]ost-*Dart* cases have allowed both sides to 'submit proof' in different ways[,]" including by filing supplemental affidavits or declarations. *Sloan*, 2015 WL 9272838, at *5 n.5 (first alteration in original) (quoting

*Dart Cherokee*, 135 S. Ct. at 554); *see also Ibarra*, 775 F.3d at 1197, 1200 (noting that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal" and directing the district court to "set a reasonable procedure in the first instance") (internal quotation marks and citation omitted)); *Ritenour v. Carrington Mortg. Servs. LLC*, No. 16-02011-CJC, 2017 WL 59069, at *2 (C.D. Cal. Jan. 5, 2017) (denying motion to remand where defendant "provide[d] detailed calculations in support [of its amount in controversy allegations] based primarily on the declaration of [a top executive official]").

Here, both sides have made conflicting arguments regarding the amount in controversy in this case.  To support the contention that this Court has diversity jurisdiction, Defendants point to Apton's civil cover sheet and the language of the complaint itself; they argue that the civil cover sheet states that the amount at issue is "$100,000.00[,]" and that it is reasonable to conclude that this figure is accurate in light of the complaint's request for "compensatory damages, punitive damages, and attorney's fees."  (Defs.' Opp'n at 9.)  By contrast, Apton insists that the amount listed on the civil cover sheet was an error (*see* Pl.'s Remand Mot. at 9), and offers a sworn declaration that contends that his costs and expenses at the time of removal are far below the jurisdictional threshold (*see* Apton Decl. at 2 (claiming that his compensatory damages are a mere "$13,142.39, consisting of $9,095.76 for past lease payments (36 payments of $252.66 per month), $95.73 for alternative transportation, $294.55 for court fees and service expenses, and $3,656.25 for attorneys' fees")).

In this Court's view, Defendants' effort to carry the burden of establishing diversity jurisdiction by a preponderance of the evidence falls short, for at least two reasons.  First of all, however compelling it may be to rely on Defendants' contention that Apton himself valued his case at $100,000 when he filed it, the amount that a plaintiff has listed on a civil cover sheet does not carry the day with respect to establishing the amount in controversy.  *See Williams v. Toys "R" US-Del., Inc.*, No. 15-13943, 2016 WL 5723588, at *1 (D. Mass. Sept. 28, 2016) ("Courts in this district and elsewhere have held that although a civil cover sheet may provide evidence of the amount in controversy, it is not in itself dispositive." (internal quotation marks and citations omitted)); *see also Magdaleno v. L.B. Foster Co.*, No. 06-cv-1882, 2008 WL 496314, at *1 (D. Colo. Feb. 19, 2008).  And this is entirely logical, because the statute itself indicates that the plaintiff's own representations about the amount in controversy do not dispose of the jurisdictional issue.  *See* 28 U.S.C. § 1446(c)(2).  That is, it makes no difference that the plaintiff has assessed the value of his recovery at more (or less) than $75,000 in his complaint or, presumably, on the cover sheet that accompanies his pleading, because, in any event, the defendant's notice of removal may prevail with respect to the amount-in-controversy question if the statutory criteria are met.  *Id.*

The fact that the law does not necessarily credit the plaintiff's initial representations about the amount in controversy is especially significant where, as here, the plaintiff subsequently *disputes* the stated amount.  (*See* Pl.'s Remand Mot. at 9 (explaining that the $100,000 figure listed on the civil cover sheet was "clearly an oversight").)  Indeed, no less an authority than the Supreme Court has made clear that, even if a plaintiff's statement on the civil cover sheet justifies the defendants' initial

removal decision, *see Dart Cherokee*, 135 S. Ct. at 554 (noting that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"), "when the plaintiff contests, or the court questions, the defendant's allegation" about the amount in controversy once the case has been so removed, "[e]*vidence* establishing the amount is required[,]" *id.* (emphasis added).  And, here, Defendants have offered none.  *See Reed v. AlliedBarton Sec. Servs., LLC*, 583 F. Supp. 2d 92, 94 (D.D.C. 2008) (observing that a defendant's "unsubstantiated allegation that Plaintiff 'made a demand well in excess of $75,000,' *without more*, does not sufficiently prove the amount in controversy" (emphasis added)).

Second, to the extent that Defendants seek to demonstrate that the $75,000 jurisdictional threshold has been satisfied because Apton's complaint asks not only for compensatory damages and attorneys' fees, but also for punitive damages (*see* Defs.' Opp'n at 9), this Court finds that effort unavailing.  In the first place, the record reveals that the compensatory-damage figure is nowhere near the $75,000 minimum:  Apton has declared under penalty of perjury that his compensatory damages and attorneys' fees are approximately $13,000, and there is no evidence in the record before the Court that refutes Apton's representations regarding the scope of his costs and expenses.  Furthermore, it is not at all clear that punitive damages are even available under New York law with respect to a case such as this one.  *See Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 291 (S.D.N.Y. 1995) (commenting that "[i]t is black letter New York law that punitive damages are not normally available for a breach of contract claim").

Regardless, and in any event, Defendants have offered no evidence to suggest that Apton would be entitled to at least $62,000 in punitive damages in this case.  (*See* Defs.' Opp'n at 9 (arguing merely that "it is reasonable to conclude" that the amount in controversy is $100,000 based on the "complexities" of a case involving "a nationwide recall").)  Courts have consistently held that "the mere *possibility* of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met."  *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (emphasis added)); *see also Antal v. State Farm Mut. Ins. Co.*, No 5:15cv26, 2015 WL 2412358, at *3 (N.D. W. Va. May 20, 2015); *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).  And, here again, Defendants have not offered any "proof" of the applicability of punitive damages as a measure of the amount in controversy in this case, much less established that any such award of punitive damages would be sufficient to satisfy the amount-in-controversy requirement under the circumstances presented here.  *See Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 154 (D.D.C. 2007) ("Because this completely speculative estimate is factually unsupported, and the burden is on [the defendant] to establish removal jurisdiction, punitive damages will not be included in determining the amount in controversy."); *see also Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972) (holding that, "in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages" (citation omitted)).

Notably, this Court's findings rest primarily on the fact that Defendants here have done *nothing* to demonstrate the actual value of the instant case, and should not be

taken to mean that a defendant in a case such as this one could *never* satisfy its burden of establishing the requisite amount in controversy over the plaintiff's objection. Indeed, defendants have successfully demonstrated that the $75,000 threshold is surpassed by, for example, "introduc[ing] evidence of jury verdicts in cases involving analogous facts." *Surber*, 110 F. Supp. 2d at 1232 (citations omitted); *see also Burk*, 348 F. Supp. 2d at 1069. But in the instant case, Defendants have opted to rely solely on the fact that (1) Apton mentioned $100,000 in his civil cover sheet (*see* Defs.' Opp'n at 6–9), and (2) his complaint requests "compensatory damages, punitive damages, and attorney's fees" (*id*. at 9). Meanwhile, Apton has at least put forward a sworn affidavit that details the nature of his expenses at the time of removal and sets forth facts that contradict Defendants' contention that the amount in controversy exceeds $100,000. (*See* Apton Decl. at 2.) Consequently, this Court cannot find, by a preponderance of the evidence, that the $75,000 threshold is met and, thus, that the Court has diversity jurisdiction over the instant action.

### B. This Court Does Not Have Federal-Question Jurisdiction In This Case Because Apton's Contract-Related Claims Do Not Necessarily Require The Resolution Of A Substantial Question Of Federal Law

On its face, Apton's complaint has brought a series of state-law claims. (*See* Compl. at 8–10.) As noted, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. A federal issue is "necessarily raised" when an essential element of a plaintiff's case "will necessarily require the

application of [federal] law to the facts of [plaintiff's] case." *Id.* And for a federal

issue to be "actually disputed," there must be a "dispute respecting the effect of federal

law." *Id.* at 1065–66 (internal quotation marks, alterations, and citations omitted).

      1.    <u>Apton's Claims Do Not Necessarily Require The Resolution Of A</u>
              <u>Substantial Question Of Federal Law</u>

In the instant case, Apton alleges various contract-related claims that pertain to

the purported breach of his motor-vehicle lease (*see* Compl. at 2; *see also id.* at 8–9

(claiming breach of contract, breach of warranty, violation of New York General

Business Law § 198-a, and violation of New York Personal Property Law § 337)), none

of which *necessarily* turns on the resolution of a dispute regarding a substantial federal

question. Specifically, Apton appears to have accepted the federal agency's

determination that the airbag in his leased vehicle is defective, and in his complaint,

Apton merely maintains that the vehicle was subject to a "standard written

manufacturer's warranty[,]" as well as a "New Vehicle Limited Warranty, which covers

any repair to correct a manufacturer[']s defect in material or workmanship[.]" (*Id.* at 6

(internal quotation marks omitted).) Apton further alleges that, despite these

warranties, Defendants failed to provide him with options to repair his defective vehicle

and indicated that the availability of replacement parts was unknown. (*See id.* at 7.)

Nothing in Apton's lawsuit challenges the validity of NHTSA's decision to

require the safety recall, nor do his claims contest any orders that NHTSA issued in

accordance with the recall or any other provision of federal law related to the recall

undertaking. *Compare Montana v. Abbot Labs.*, 266 F. Supp. 2d 250, 259 (D. Mass.

2003) (finding that state law breach of contract claims arose under federal law where

plaintiff alleged that defendants violated certain Medicaid obligations, and plaintiff's claim "require[d] interpretation of contracts to which the Federal Department of Health and Human Services is a party"). Rather, as noted, Apton's complaint merely seeks a declaration that, within the context of an existing NHTSA recall, Defendants have acted in a manner that is "in default of the Lease" and, thus, the lease is "void and terminable[,]" as well as an award of statutory, punitive, and/or compensatory damages under state law. (Compl. at 10.) If anything, then, Apton's claims turn on the terms of the lease and the parties' intent with respect to that agreement, when interpreted under state law, and Defendants have not asserted that any of the necessary elements of any of Plaintiff's claims rely upon or implicate federal law. *See Jasper v. Maxim Integrated Prods., Inc.*, 108 F. Supp. 3d 757, 765–66 (N.D. Cal. 2015) (noting that "[t]he gravamen of Plaintiff's complaint is a state law breach of contract claim" and the defendant "has failed to explain how any of the elements for breach of contract, on their face, necessarily raises a substantial issue of federal law"). Thus, the state-law claims in this case do not raise a federal issue upon which this Court's subject-matter jurisdiction can be based. *See, e.g.*, *D.B. Zwirn Special Opportunities Fund., L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 487 (S.D.N.Y. 2008) (remanding case for lack of federal-question jurisdiction after concluding that, "[a]t its core, this is a state law breach of contract action"); *see also Mottley*, 211 U.S. at 154.

2.  Defendants' Arguments Regarding The Import Of The NHTSA Recall Are Not Persuasive

Undaunted, Defendants argue that this Court has federal-question jurisdiction over Apton's case because his state-law claims "require resolution of an issue of federal

law[;]namely[,] that [Apton's] vehicle has been the subject of a safety recall mandated by NHTSA[.]"  (Removal Notice at 6; *see also id.* at 5–6 (asserting that "[t]his action and each of Plaintiff['s] claims in his Complaint purportedly derive from the notice of recall issued by [Volkswagen], pursuant [to] the Motor Vehicle Safety Act"); Defs.' Opp'n at 10 (maintaining that, because of the recall, "this case turns on the resolution of a substantial federal issue involving the actions of a federal agency"); *id.* (emphasizing "NHTSA's unprecedented and extensive role in undertaking the investigation and supervising the recall of Takata airbag inflators").)  Defendants do not explain why the mere fact that the federal government deemed Apton's vehicle defective—and, thus, receipt of the safety notice prompted him to sue in order to pursue his repair-related rights under the lease contract—necessarily means that Apton's lawsuit *raises* a federal issue.  Nor do they squarely contend with the fact that, on the face of his complaint, Apton merely maintains that he has brought "this action to exercise his rights under the Lease as well as the laws of the State of New York (the law governing the lease)" regarding repairs (Compl. at 2), which means that no substantial federal issues are necessarily raised and actually disputed with respect to the complaint's claims for breach of contract, breach of warranty, and violation of New York's General Business and Personal Property laws.  (*See supra* note 2 (mentioning the New York laws at issue).)

Moreover, Defendants fail to provide any support for the proposition that a civil action 'arises under' federal law for jurisdictional purposes simply and solely because a federal act or decision is the impetus for a plaintiff to file an otherwise purely state-law claim.  It is true that the Takaka airbag recall provides the background context that

explains Apton's decision to invoke his repair and replacement rights under the contract and New York law, but Defendants have not provided cases that establish that the fact that Apton's claims "purportedly derive from the notice of recall" *matters*.  (Removal Notice at 5.)  To the contrary, existing precedents firmly establish that the standard for finding that a state-law claim raises a substantial federal issue is far more demanding. *See Mottley*, 211 U.S. at 152 ("Although [the] allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution."); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12 (1983) (observing that, even where "both parties admit that the only question for decision is raised by a federal preemption defense[,]" a state-law claim does not arise under the Constitution for removal purposes).  Consequently, Defendants are hard-pressed to make a convincing argument that Apton's claims necessarily "require resolution of . . . [the] safety recall [question.]"  (Removal Notice at 6.)

    If Defendants' assertion that "NHTSA has taken an unprecedented supervisory role" over "the largest and most complex safety recall in U.S. history" (*see* Defs.' Opp'n at 10 (internal quotation marks and citation omitted)) is intended to be an argument regarding complete preemption as a basis for subject-matter jurisdiction, Defendants' opposition brief does little to make a clear and coherent contention to this effect.  *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 204 (2004) (holding that ERISA so "completely pre-empted" state law cause of action such that action was "removable from state to federal court"); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559–60 (1968) (concluding that state

law claims arose under section 301 of the Labor Management Relations Act and were thus removable to federal court).   And the applicability of preemption doctrine is far from obvious; indeed, significant questions abound, not the least of which is whether the recall scheme is even the type of federal program that Congress intended to preempt the field of state law entirely, *see In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, No. 1:02-cv-15000, 2004 WL 1170145, at *2 (N.D. Ohio May 19, 2004) (observing that "[t]he weight of authority" suggests "that Congress never intended the [Motor Vehicle] Safety Act to completely preempt state law claims"), and whether Defendants' hypothetical future intention to assert aspects of the agency's recall scheme as a defense to Apton's breach of contract claims is sufficient given that the Supreme Court has long held that defenses cannot give rise to federal-question subject matter jurisdiction, *see Franchise Tax Bd.*, 463 U.S. at 10–12; *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 459 (1894).   In any event, as noted, Defendants have not fleshed out any arguments regarding the potential preemptive effect of the regulatory scheme as a matter of law, and thus, they have failed to carry their burden of demonstrating that removal is proper on this ground.   *See New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, No. 16-cv-149, 2016 WL 4919871, at *21 n.18 (D.D.C. Sept. 14, 2016) (declining to consider "perfunctory and undeveloped" jurisdictional arguments from party with the burden of establishing jurisdiction (internal quotation marks and citation omitted)).

Nor can Defendants shore up their assertions regarding federal-question jurisdiction by relying on the doctrine of prudential mootness.   (*See* Defs.' Opp'n at 10.)   The prudential mootness doctrine is "a facet of equity[,]" *Penthouse Int'l, Ltd. v.*

*Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991), which recognizes that, "[i]n some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant[,]" *City of New York v. Baker*, 878 F.2d 507, 509–10 (D.C. Cir. 1989) (alteration in original) (internal quotation marks and citations omitted).  Defendants invoke that doctrine here to support their contention that "Plaintiff should not, by filing this lawsuit, be permitted to circumvent or interfere with the recall process being administered by NHTSA" and that "this Court should defer to NHTSA's expertise in coordinating the most complex consumer recall in U.S. history[.]"  (Defs.' Opp'n at 10.)  But for the reasons explained above, this Court concludes that Apton is not seeking to "circumvent" (or challenge) NHTSA's role with respect to the recall at all; rather, he appears to have brought the instant case to vindicate his rights as a leaseholder, property holder, and consumer under New York law.  Furthermore, because there is no indication that prudential mootness can *establish* subject matter jurisdiction where such jurisdiction is otherwise lacking, *see Penthouse*, 939 F.2d at 1019 (explaining that the doctrine of prudential mootness "is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power"); *MBIA Ins. v. FDIC*, 708 F.3d 234, 245 (D.C. Cir. 2013) (explaining that prudential mootness merely permits the court in its discretion "to withhold relief *it has the power to grant* by dismissing the claim for lack of subject matter jurisdiction" (emphasis added) (internal quotation marks and citation omitted)), the prudential mootness doctrine is utterly inapposite where, as here, the Court is deciding whether it actually has federal-question jurisdiction over a plaintiff's claims.

In short, Defendants have failed to demonstrate that the state-law claims that Apton has brought in this case necessarily require the resolution of a substantial question of federal law, which means that Defendants' argument that a federal question exists in this case must be rejected.  Consequently, this Court cannot exercise jurisdiction over this matter under the federal-question jurisdiction statute (28 U.S.C. § 1331), and Defendants' attempt to remove this case to federal court pursuant to 28 U.S.C. § 1441 on federal-question grounds is improper.  *See Washington Consulting Grp., Inc. v. Raytheon Tech. Servs. Co.*, 760 F. Supp. 2d 94, 109 (D.D.C. 2011); *Steele v. Salb*, 681 F. Supp. 2d 34, 35, 37 (D.D.C. 2010).

### C.  Apton Is Not Entitled To Attorneys' Fees

Finally, this Court notes that, although Apton has prevailed on his motion to remand, his insistence that he is entitled to an award of fees and costs under the circumstances presented here is mistaken.  (*See* Pl.'s Remand Mot. at 11 (quoting 28 U.S.C. § 1447(c), which states that, if the plaintiff is successful in securing the remand of a removed civil action, the court "'may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal'").)  Apton ignores the simple fact that he has represented *himself* in this action pro se, and it is well established that pro se litigant lawyers cannot recover fees for actions that they have brought on their own behalf, no matter how talented and typically well-compensated that lawyer might be when working on behalf of a client.  *See, e.g.*, *Kay v. Ehrler*, 499 U.S. 432, 435–36 (1991) (concluding that pro se litigant lawyer could not recover attorneys' fees in civil rights action); *Ezra v. BWIA Int'l Airways, Ltd.*, No. 00-cv-2504, 2000 WL 1364354, at *1 (E.D.N.Y. 2000) (denying pro se attorney litigant's

request for attorneys' fees under 28 U.S.C. § 1447(c)); *see also Kooritzky v. Herman*, 178 F.3d 1315, 1318 (D.C. Cir. 1999) (noting that provisions for the payment of attorneys' fees exist in various "fee-shifting statutes[,]" and that "[t]here is no limiting language in the *Kay* opinion to make us believe that the Supreme Court intended its reasoning [excluding pro se attorney litigants from such fees] to apply only to the specific statute before it").  It makes eminent sense that a pro se attorney would not recover fees for work done on his own behalf, because "the word 'attorney' assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award" of attorneys' fees.  *Kay*, 499 U.S. at 435–36. And as Defendants here have recognized, that basic principle entirely disposes of Apton's motion for attorneys' fees.  (*See* Defs.' Opp'n at 11–12.)

But there is more:  even if the merits of Apton's fee motion were considered, it is clear to this Court that the motion fails, primarily because it was not manifestly unreasonable for Defendants to seek removal under the circumstances of this case.  The Supreme Court has explained that "the standard for awarding fees should turn on the reasonableness of the removal[,]" and that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Here, it was not objectively unreasonable for Defendants to rely upon Apton's own representations about the amount in controversy when evaluating whether diversity jurisdiction existed at the time the notice of removal was filed.  Moreover, this case does have federal underpinnings:  the fact that the recall at

issue here originated with a federal agency could lead a reasonable defendant to assert (mistakenly) that Apton's state-law claims raise a federal issue.  In other words, this Court finds that the non-removability of this case was not so obvious as to warrant an award of costs and expenses; therefore, even if this matter had involved a viable request for an award of the fees that retained counsel had incurred in representing Apton, this Court would decline to exercise its discretion to award attorneys' fees or any other costs and expenses with respect to the removal issue.  *See, e.g.*, *Simon v. Hofgard*, 172 F. Supp. 3d 308, 320–21 (D.D.C. 2016).

## IV.   ORDER

Defendants have not demonstrated that this Court has either diversity or federal-question jurisdiction over the instant case, and it is well established that, "[i]f federal jurisdiction is doubtful, a remand to state court is necessary."  *Reed*, 583 F. Supp. 2d at 93 (internal quotation marks and citation omitted).  Nevertheless, not every successful remand motion has to be rewarded with an order for fees and costs, *see* 28 U.S.C. § 1447(c); *Simon*, 172 F. Supp. 3d at 320–21, and it is doubtful that a motion for costs is even appropriate where, as here, the attorney-litigant is representing himself. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion to Remand and Award of Costs is

**GRANTED IN PART AND DENIED IN PART**.  Plaintiff's motion to remand is

granted, and this case is remanded to the Superior Court of the District of Columbia in

its entirety.  Plaintiff's motion for fees and costs in connection with the remand

litigation is denied.

DATE:  January 17, 2017                           *Ketanji Brown Jackson*
                                                  KETANJI BROWN JACKSON
                                                  United States District Judge